JACOB W. SATTERTHWAIT,

*vs.*

JOSEPH T. MARSHALL.

*New Castle, Feb. T. 1872.*

It is within the jurisdiction of the Court of Chancery to decree the specific per-
formance of a contract for the assignment of an interest in a patent.

The true test of the jurisdiction for specific performance is the adequacy or inadequacy of damages as a redress for the breach of the covenant.

When under a contract of sale, from the nature of the chattel interest contracted for, or from any circumstances, a sufficiently certain and adequate redress cannot be afforded by a suit at law, equity will relieve, without respect to the question whether the subject-matter of the contract is real or personal property.

The act of Congress, which gives to the Courts of the United States exclusive cognizance of suits under the patent laws, applies only to such suits as directly involve the question of the validity of a patent, or of its infringement.

When, pending an application for a patent, the inventor and two other persons enter into articles of partnership, for the business of selling rights under the patent, and the manufacture and sale of the patented articles, and the inventor further covenanted that, after the patent was obtained, he would assign to each of the other parties, one-third interest in the patent right : *Held*, that the right to an assignment became absolute upon the obtaining of the patent, and was not to depend upon the subsequent contingency of forming and prosecuting a partnership.

The rule that a court of equity will not decree the specific performance of an agreement for a partnership, goes only to the extent that the Court will not undertake to compel unwilling parties *to act in the relation of partners.* An agreement for the future execution of formal articles of partnership will be enforced in equity although after they are executed the Court cannot compel the parties to act under them.

The assignor of a covenant for the assignment of an interest in a patent, who has assigned his whole interest in the covenant absolutely, is not a necessary party to a bill by the assignee for the specific performance of the covenant.

The objection of the want of a party is never in the absence of gross *laches* a fatal one. Whenever justice so requires, the Court will allow a necessary party to be made, even after a hearing, upon just terms.

In a bill for specific performance of a written contract, the execution of which is denied, a contract of a date different from that alleged in the bill may be proved as an exhibit for the purpose of evidence although it could not be a ground of relief.

BILL FOR SPECIFIC PERFORMANCE OF A CONTRACT.— This bill is filed for the specific performance of a covenant, by the defendant, for the assignment of an interest in a certain patent held by him for an improved grate-bar, to be

used in the furnaces of steamboats, locomotives, heaters, &c. . The complainant claims to be entitled to one-third of the patent in his own right, and to another third as assignee of Hayes Chandler, an original covenantee, with the defendant, for the purchase of that interest.

The case made by the bill, is that, the defendant, being the inventor of the improved grate-bar, and an application for a patent being before the Patent Commissioner, the defendant, the complainant and Hayes Chandler entered into articles of partnership, bearing date the 8th June, 1870, for the business of selling rights under the patent and the manufacture and sale of the patented article ; the several co-partners agreeing to bear equally the expenses of procuring the patent and carrying on the business, and to share equally the profits ; that the defendant by the same articles, further covenanted that so soon as a patent should be obtained, he would, in consideration of the covenants in the articles contained, assign to the complainant and Hayes Chandler each, one-third of patent-right.

It was further alleged that a patent for the improvement was issued on the 24th January 1871, that the complainant and Hayes Chandler prior to the issuing of the patent had fully performed the covenants on their part, having contributed towards the expense thereof, considerable sums of money, which are specified in the bill, amounting to more than two-thirds of the whole expense incurred, that nevertheless the defendant, after obtaining the patent, refused to make the assignment covenanted for in the articles of partnership ; that Hayes Chandler had assigned to the complainant his interest in the patent, thus entitling the complainant to the two-thirds, one in his own right, the other as assignee.

The answer denies that any covenant for the assignment of an interest in the invention for which this patent

was granted ever was finally executed.   Its statement is that in April 1870, while an application by the defendant for a patent for an improved gate-bar was pending, a verbal agreement was made for a partnership such as the bill alleges, and for the assignment of two-thirds of the patent right for the improvement as then applied for, should a patent be granted.   That such agreement was then reduced to writing, but not signed, the complainant and Chandler refusing to execute it, until, by much solicitation, the defendant induced Chandler to sign it on the 8th June, when the defendant Marshall, also signed it; that, after this, the complainant frequently refused to sign it until the defendant considered the verbal agreement as rescinded, and so treated it; that the signature of the paper, by the complainant, on the 7th December 1870, was without the defendant's knowledge.   The answer further states that the invention which was the subject of the agreement of April 1870, being the same which was reduced to writing, but, as the answer alleges, never finally consummated, was rejected by the Patent Office ; notice to that effect being given to the defendant on the 21st April 1870; that the patent finally granted in January 1871 was for an invention substantially new and different from the one to which the agreement related, the defendant having made improvements upon the original invention without the aid of the complainant and Chandler ; so that the patent actually obtained would not be covered by the agreement relied on, even were such agreement supposed to have been executed and in force.

This was the whole defense as taken by the the answer though other objections to the relief prayed for, were made at the hearing, by way of demurrer.

These objections are stated in the opinion of the Chancellor, as is also the evidence so far as material.

The cause came on to be heard on April 15, 1872.

Argument and opinion on admissibility of the agreement as an exhibit.

At the hearing there was offered as one of the complainant's exhibits, certain articles of agreement of April 7, 1870, between the complainant and defendant Chandler.

*Whiteley*, for the defendant, admitted the execution of the paper, but objected to its admissibility upon the ground that the contract of partnership is alleged in the bill to have been made June 8, 1870. There is no alleged agreement of April 7, and therefore no allegation to which this evidence can apply. The bill having alleged an agreement as a ground of relief, the complainant cannot now, without a proper allegation, substitute another.

*E. G. Bradford, Jr.*, for the complainant, insisted that the exhibit was admissible on two grounds :—

(1.) It is merely a matter of evidence, not proper to be stated in the bill. It is offered merely as evidence, tending to explain the conduct of the parties in relation to the execution of the counterparts, and not as a new and substantive ground of relief.

(2.) This exhibit is in issue. The answer alleges a verbal agreement made about April 7th, 1880, the same in substance as the one alleged in the bill, and that no other agreement was ever made. The fact then of another agreement is put in issue by the answer. Though not stated in the bill, it will be inserted in the bill by way of amendment. · The replication puts it in issue.   1 *Dan. Ch. Pr.* 462.

THE CHANCELLOR :—

I think the exhibit is admissible upon two grounds ;— First, it is relevant to explain the conduct of the complainant in delaying to execute the contract of 8th June ·1870. He may have rested easy upon the original contract of April as remaining in force until the substiution of the counterparts. His delay, notwithstanding frequent

alleged requests by the defendant, is urged by the answer as amounting to an abandonment of the contract. The fact that a contract in writing was already in force and so to stand until the counterpart should be executed tends to rebut what is taken by the answer as a material ground of defense.

Second. The answer has put the execution of the April contract directly in issue. It alleges that the original agreement for a partnership was a verbal one made on the 8th April and then reduced to writing, but that the complainant and Hayes Chandler refused to execute it although requested so to do. Now the production of the paper executed on its face as of its date 7th April 1870, with the testimony of the attesting witness, Judge Bradford, must be admissible to disprove this allegation. There was no necessity for the complainant to amend his bill by alleging the execution of this contract ; for it is not necessary to be made a part of his case for the purpose of relief, but is adduced only in evidence to disprove the allegation of the answer. The allegations of the answer, denied by the entry of replications and issues, formed part of the issues in the cause and evidence may be adduced against them. I *Dan. Ch. Pr.* 462.

The defendant's counsel is correct in assuming that no contract can be the ground of relief except the one relied on in the bill, *i. e.* the contract of 8th June. The present exhibit is not admitted to make a new case for the complainant by being used as the basis of a decree, but only to support the case made in the bill, by disproving the allegations of the answer.

The exhibit is admitted.

The argument of the cause, on the merits, then proceeded.

*E. G. Bradford, Jr.*, for the complainant.

This case is within the jurisdiction of the State Court.

The jurisdiction vested in the United States Court is of " cases arising under the patent laws of the United " States." This is not such a case. It is a bill for a specific performance of a covenant to assign, a subject of general equitable jurisdiction. The connection of the case with the patent laws is incidental, merely. *Laws of the U. S. December* 1869 *to July* 1870, *p.* 170, *Sec.* 55 ; *Wilson vs. Sanford et al.,* 10 *How.* 99 ; *Slemmer's Appeal,* 58 *Pa. St.* 155 ; 3 *McLean* 525 ; 1 *Woodb. & Min.* 34 ; 16 *Conn.* 409.

Specific performance will be decreed of contracts relating to chattels, unless clearly a breach is remediable in damages. 2 *Sto. Eq. Jur. Secs.* 717-19 In this case there can be no adequate remedy at law because, (1), the damages are not susceptible of computation, and (2), the defendant is without property, as is alleged and not controverted.

The answer is not evidence because the oath is waived by the bill, and it is sworn to only to found a motion to dissolve, but the complainant may avail himself of admissions made in the answer. *Bartlett vs. Gale,* 4 *Paige* 504 ; *Patterson vs. Gaines,* 6 *How.* 588.

The assignment by Chandler vested in the complainant all his interest, and being an equitable interest was not within the act of Congress, requiring assignment pursuant to its provisions. 2 *Sto. Eq. Jur. Sec.* 783. It was not a sale of his interest in the partnership, but an assignment of a share of the right. It is the retention of his interest that enables us to treat the partnership as continuing, and so entitles us to the assignment of Chandler's share of the right. Chandler, however, has no interest in this suit and need not be joined. The answer makes no denial of partnership as to Chandler, and its silence as to matters alleged and presumed to be within defendant's knowledge is to be taken as an admission. 2 *Dan. Ch. Pr.* 977.

Taking up the case made by the bill :—

The fact that an original partnership subsisted before June 8th, 1870, does not affect the right to relief, upon the agreement then executed. The article of June 8 created a new and substituted partnership. The intent is clearly shewn, to create a present and not a prospective partnership. At all events, it is enough to shew that such a partnership, as alleged, did exist on the day specified. The complainant's equity is not answered by asserting the revocability of the partnership, nor that a partial performance only of the covenant is prayed. The covenant is in its nature distinct from the partnership.

1. The complete performance by Chandler and complainant of their obligations vested the right irrespective of the continuance of the partnership.

2. But the defendant is estopped from denying its continuance, having permitted them to expend money and labor on faith of the assignment. (*a.*) Even if *de facto* dissolved before the patent was granted he cannot deny its existence. The revocability of a partnership is subject to the same principle of estoppel as a license. (*b.*) On the other hand, if the partnership continued until after the patent was granted, and was necessary to entitle complainant to an assignment, the defendant was estopped from revoking it. *Nettleton vs. Sikes*, 8 *Metc.* 34.

3. Equity under certain circumstances, will require the continuance of a partnership as between the partners, *i. e.*, when the dissolution would work injustice. *Blisset vs. Daniel*, 23 *E. L. & Eq.* 105. The utmost good faith is required in all transactions of partners. *Sto. on Partn. Sec.* 172-5, *note* 1.

4. There is no equitable objection to a covenant to assign a patent right as between partners. *Slemmer's Appeals*, 58 *Pa. St.* 155.

A demand by Chandler for assignment and its refusal were proved ; this was a refusal to perform partnership obligations, and demand by one party in interest was equivalent to demand by both if necessary. The bare omission to assign was a breach of the articles and left us to our remedy. It is not true that in all cases the Court will not enforce partnership articles. It will do so when it has gone informally into operation. *Sto. on Part. Sec.* 189.

*Whiteley*, for the defendant.

We do not question the jurisdiction, but the complainant must stand or fall by the case made by his bill. This is defective in not making Chandler a party complainant. His assignment does not cover his whole interest under the agreement which was a share in the partnership, while he assigns only his interest in the patent. But even if the assignment had been of his entire interest he must be a party. So, at law, and *a fortiori* in equity, where all possible interests must be represented.

There are two views of this case :—

*First.* These are not articles of partnership, but an agreement to form one. It is executory or prospective and contingent. The subject of it was not then in existence, *i. e.* the patent right. An application then pending had been rejected. The agreement was in substance that, when a right was obtained, then a partnership should be formed. The terms used (being in the present tense) are to be construed according to the subject-matter.

The result is, that the bill should have been for a specific performance of the whole article, to compel formation of the partnership and assignment as an incident. The performance must go to all the covenants. But equity will not decree performance of a co-partnership agreement unless a specific time for it is prescribed by the

44—DEL. CH. IV.

agreement.   The remedy in such case is by suit at law. *Colly, on Partn. Sec.* 205 ; *Story on Partn. Sec.* 189; *Hercy vs. Birch,* 9 *Ves.* 357.

*Second.* We may consider the case as if a partnership was formed and this was a bill for performance of a single covenant.    Then the remedy would be an action of covenant at law.    This objection is not answered by the supposed inability of defendant to pay a judgment.  Adequacy of remedy at law does not refer to a party's ability, but the question whether, according to the course and practice of courts of law, a remedy is open.    Partners have a remedy at law for the breach of specific covenants. *Colly on Partn. Sec.* 245-7 ; *Hatcher vs. Seaton,* 2 *M. & W.* 47 ; *Glover vs. Tuck,* 24 *Wend.* 153 ; *Paine vs. Thatcher,* 25 *Ib.* 450 ; *William vs. Henshaw,* 11 *Pick,* 83-4.

It is true, in special cases, equity will enforce performance of specific covenants.  But this is only after long and persistent refusal to perform a covenant and a demand for its performance. *Marshall vs. Colman,* 2 *Jac. & Walk.* 266.   Here the bill was filed within ninety days after the right was obtained and no demand had been made. The demand was only by Chandler for his interest.

THE CHANCELLOR :—

Notwithstanding the denial by the answer, the proof is ample to establish the articles of partnership, and the covenant, on the part of the defendant, to assign to the complainant and Hayes Chandler, each, one-third of the patent right in controversy. *Prima facie* the written articles, with the evidence of the attesting witness, Judge Bradford, as to the signature of these parties, is proof of the covenant.  Against this *prima facie* proof, the defendant adduces no evidence whatever to support the case made by the answer, which is, that, before Satterthwait signed the articles on the 7th Dec. 1870, he had, by his persistent neglect and refusals to execute it, in effect

rescinded, or entitled the defendant to rescind, the original verbal agreement for a partnership.   On the contrary there is abundant evidence, drawn from the acts and conduct of the defendant to show that the partnership was in full force, recognized and acted under by all the parties, after as well as before the 7th December 1870, when Satterthwait signed the articles.    Marshall frequently spoke of and introduced Satterthwait to others as his partner in this invention both before and after December 1870 ; to some of the witnesses as late as March or April 1871, as, to William Price, Wm. L. Conn and Benj. F. Vandever. More than this, it is proved, that in February 1871, Marshall and Satterthwait went to together to the office of the Wilmington Commercial, and caused an advertisement to be inserted in that paper recognizing the partnership, and also caused circulars to the same effect to be printed—the advertisement being written partly at Marshall's dictation.

During all the interval between the original agreement in April, 1870, and the obtaining of the patent in January, 1871, Chandler and Satterthwait advanced money and paid bills, some of the latter being paid after December, 1870, such as the fees paid to Mr. Fisher the agent for procuring the patent in January, 1871, and the bill for advertising in the Commercial in February, 1871.

The proof of the partnership and of the covenant to assign is so ample as not to need any further comment.

Again, it appears that the consideration for which the assignment was to be made was fully performed on the part of Chandler and Satterthwait. The consideration was the agreement on their part to become partners, and as such to bear an equal share in the expense of procuring the patent and carrying on the business under it. For this they were to receive an assignment of the stipulated shares of the patent right so soon as the

patent should be issued.  It is unquestionable that they performed their part of the agreement in good faith, advancing all the money called for and in the whole more than two-thirds of the expense, which was to be their share under the articles, and giving also personal attention, so far as was then requisite, to the interests involved.

It is unnecessary to examine in detail the evidence on this point ; and I conclude that on the 24th of January, 1871, the date of the issuing of the patent, Chandler and Satterthwait were entitled under the covenant in the articles to an assignment of two-thirds of the patent rights.

The question then, to be next considered, concerns the remedy.  Ought this Court to decree a specific performance of the covenant, or leave the parties to their legal remedies?  In the first place, it is conceded that the jurisdiction of this Court is not divested by the Act of Congress, which gives to the Courts of the United States exclusive cognizance of suits under the patent laws.  For that Act is construed to apply only to such suits as directly involve the question of the validity of a patent or of its infringement ; and this suit does neither.  *Brooks and Morris vs. Stolley*, 3 *McLean* 523 ; *Slemmer's Appeal*, 58 *Penna. St.* 155.

Again, the fact that this covenant is for a chattel interest and not for an estate in land is not, under the circumstances, a sufficient objection to a decree for specific performance ; because the value of a patent right cannot be so ascertained, by computation or, by any sufficiently certain estimate, to make a suit at law for damages an adequate remedy for a breach of a covenant to assign the right.  This is the true test of the jurisdiction for specific performance ; and upon this test, viz.: the adequacy or inadequacy of damages as a redress under the circumstances, does the rule proceed, that, in all cases, a specific performance will be decreed of a contract for the

conveyance of real estate, while generally, with respect to contracts for chattels and for the performance of personal acts this Court will not interfere, because for a breach of a contract to sell or purchase land, damages in money are not considered an adequate redress, while for the non-assignment of chattels and breach of personal covenants generally, damages are a sufficient remedy.

But whenever, from the nature of the chattel interest contracted for, or from any circumstances a sufficiently certain and adequate redress cannot be afforded by a suit at law, a court of equity will relieve without respect to the question whether the subject-matter of the contract is real or personal estate.

This principle is very clear and is universally acknowledged. The only difference of opinion has been as to its application to particular cases. I feel no doubt of its application to a breach of a contract for the sale of a patent right. *Nesmith vs. Calvert*, 1 *Woodb. & Min.* 34, was the case of a bill to enforce a contract to assign a patent right. No objection on this ground was made, though for other reasons the bill was dismissed for want of jurisdiction.

Were this an ordinary case of contract for an assignment of a patent right, unconnected with any other arrangement between the parties, the remedy would be indisputable. But this brings me to the objection chiefly relied upon, and which has presented the only serious difficulty, in my consideration of the case. That objection in this :—that the assignment of shares of the patent right was covenanted for as an incident or consequence of the partnership, the assignment being provided for in the articles merely to carry the partnership into effect, that a court of equity will not undertake to compel the parties to form or carry on the partnership, and the *partnership*

*failing,* the purpose of the stipulated assignment fails with it :—that therefore equity will not enforce the assignment but leave the parties to their legal remedies. I am however of opinion, after much reflection, that, upon the plain construction of these articles, and according to the intention of the parties, the right to an assignment became absolute upon the obtaining of the patent at the joint expense,—and was not to depend upon the subsequent contingency of the forming and prosecuting of a partnership under the patent. The entire arrangement between these parties embraced *two distinct covenants.* First, that Satterthwait and Chandler should contribute in the way of effort and expense toward obtaining the patent, in consideration of which and also of their agreeing to become partners in the business to be prosecuted under the patent, they were to receive shares of the right, such shares to be assigned so soon as the patent should be obtained ; and, second, it was agreed that the parties should, after obtaining the patent, prosecute the business as partners. Doubtless, it is true that the assignment of shares in the patent and the joint prosecution of the business were contemplated as parts of one general arrangement and but for the expectation of a partnership the assignment would not have been stipulated for. Nevertheless, the covenant to assign, although entered into with a view to a partnership, and contained in the articles, was in its terms and purpose an independant covenant in its operation,—as much so as if it had been executed as a separate instrument. Let us examine this point. Observe, first, what is the consideration for the assignment. It is not that a partnership in the prospective business shall be *actually carried into effect,* but simply that the complainant and Chandler had agreed to become partners. The provision is, " the said Joseph T. Marshall, the inventor of the said " improvement, doth covenant and agree, *in consideration* " *of the covenants and agreements* of the said Hayes Chand- " ler, and Jacob W. Satterthwait, to assign, &c." Thus,

Mr. Marshall plainly accepts as a sufficient consideration for the assignment the obligations which the other parties by that paper assumed and their liability to him for a breach of such obligations.

Then further, to the same effect, is the stipulation as to the time for making the assignment. Marshall agrees to make it "as soon as he receives letters-patent for "the said invention,"—not awaiting the contingency of a partnership in the business to be subsequently formed and prosecuted. As was very pertinently asked in argument, if the right to an assignment was to be contingent upon a partnership actually formed and prosecuted after the patent should be obtained, then for how long a time was this right to be so held in suspense? The partnership agreed upon was at will, and whensoever the right to the assignment might be supposed to be complete and assignment made, though a partnership might then exist, still it would be immediately determinable at the will of either party, so that to make the assignment of the right absolutely subordinate to the actual prosecution of a partnership was impossible :—and hence from the necessity of the case and the nature of the transaction, as well as from the terms and substance of the covenant before considered, the stipulation to assign an interest in the patent must be treated as an independent covenant, making the parties joint owners of the right as soon as the patent should be obtained. Doubtless, as before remarked, the partnership was contemplated and stipulated for, as part of the whole arrangement ; but with respect to this, Marshall chose to take the risk. Nor was he really at any serious risk, under this covenant, that the other parties would not bear their just share of the expense in obtaining the patent, and also form the partnership in the first instance after it should be obtained ; for had they been in default in the performance of their covenants, and had Marshall on that ground refused to assign, a court of

equity would not have aided them while they themselves were in *mala fide*, by decreeing specific performance against Marshall, and, in a suit of law against him for refusing to assign, their own breach of covenant would have gone in mitigation of damages. But under the case, as it stands on the proof, Satterthwait and Chandler bore a full share of the expense of obtaining this patent, and were ready and williing, when it was issued, to carry the entire arrangement into effect, and the failure has been wholly due to Marshall's refusal and repudiation of their rights. Now, while the Court will regard the fact that the assignment of a share in the right was intended as the basis of a partnership so far that it would not permit Satterthwait and Chandler to claim the assignment and at the same time repudiate the partnership, neither will the Court allow Marshall to avoid making an assignment, by himself repudiating the partnership ;—which would be to permit him to avoid one obligation by means of breaking another.

A very good illustration of the independent character of this covenant to assign, and an authority for the construction I have given to it, is presented in *Tilman and Gil vs. Cannon*, 3 *Humph. Tenn. R.* 637.

Bradford, Tilman and Cannon entered into articles of partnership, for the erection of a manufacturing establishment. Cannon agreed to put in certain land valued at $3000, to be conveyed to the partnership when Bradford and Tilman should select the site therefor. Bradford and Tilman bound themselves to contribute $9000 in money for the erection of a dam, factory, &c. Bradford and Tilman having gone on and expended money in prosecuting the undertaking and Cannon refusing to convey the lots, a bill was filled for specific performance, which was decreed by the Chancellor, and the decree affirmed on appeal. The Court, on the appeal say, " we think Cannon "has no ground to resist the execution of the agreement ;

"in the articles of co-partnership he agreed to convey so "soon as the site should be selected. The execution of "his conveyance was not to depend upon anything which " was to be done by his co-partners. They had a right to "demand his conveyance before they put a dollar's worth "of labor and material on his land, and upon his refusal "to convey, they might have maintained an action of "covenant against him immediately after they had se- "lected the site." "It is true," the Court proceeds to say, "that a court of equity would not have enforced a "specific execution but would have left the parties at law "to settle their legal liabilities there. But as soon as the "other partners show that they have gone on in the execu- "tion of their part of the agreement, and have expended "large sums in the construction of a dam and house, they "present a consideration that will move the conscience of "a Chancellor. It is then rendered inequitable that he "should withhold the legal title from his co-partners, and "thereby prevent them from the enjoyment of their share "of the property in the way most beneficial to them." Here, although, as in our case, the agreement to convey was evidently entered into in view, and for the purpose, of a partnership, yet the Court held that the agreement was an independent one, vesting the title to a convey- ance, before the partnership was formed, and though, in fact, it might fail. The distinction taken by the Court as to the remedy in equity depending upon the question whether or not the covenantees had expended money, is not material, because in our case, as in that, the covenan- tees have expended money and fulfilled the stipulated conditions of the assignment.

It will be observed, then, that the rule relied on in the argument, that a court of equity will not decree the specific performance of an agreement for a partnership at will, does not apply to this case. Upon a review of the cases under that rule, the meaning and whole extent of

it will be found to be, that the Court will not undertake to compel unwilling parties to act in the relation of partners. In the case of a partnership at will, to do so would infringe the right of either party to terminate the partnership at pleasure ; and even in the case of a partnership for a term, such a decree would seem to be impracticable of execution. But courts of equity do, in many cases, decree the specific performance of covenants entered into by partners with each other, where the thing to be done is some single specific act of the contracting partner, such as a decree can practically enforce, of which the most familiar illustration is an agreement between partners to execute some final instrument. Hence, an agreement for the future execution of formal articles of partnership will be enforced in equity, although after the articles shall be executed, the Court cannot compel the parties to act under them. Such an opinion was expressed by Lord Hardwicke in *Buxton vs. Lister*, 3 *Atk.* 385, and by Sir William Grant in *Hibbert vs. Hibbert*, cited in *Collyer on Part. Sec.* 203.

. So in an anonymous case cited in 1 *Madd. Chanc.* 411. *note* (*x*,) where there was an agreement amongst partners that in the case of the death of either they would execute a deed in favor of the executor of the person so dying, so as to constitute him a partner, upon his giving bond to perform the articles of partnership, the execution of the deed was enforced by a decree for specific performance. Lord Eldon's remark, in *Hercy vs. Birch*, 9 *Ves.* 357, is the usually cited authority for the position that the Court will not decree the formal execution of articles for a partnership at will ; but from a note in 1 *Madd. Ch.* 411 *n.* (*x*) it seems to be understood that Lord Eldon subsequently considered his remark too broad, as it certainly does go beyond the authorities and the clear principle of the rule against compelling parties to act as partners.

Before leaving this topic let us observe more directly

that the inability of the Court to compel these parties to become or to continue co-partners under the articles, is no objection to a decree for the specific performance of the covenant to assign shares of the patent.  It is a principle, running through the cases before cited, that under a covenant for the execution of an instrument preparatory to, or in any way connected with a partnership by which the legal position of the parties would be altered, the party covenanted with ought to be placed, by the execution of the instrument, in the legal position agreed upon,—that he should be clothed with the legal rights stipulated for ; and to this extent a court of equity will aid him, even though the partnership, being at will, may be immediately dissolved, or may not be formed.  *Collyer on Part. Sec.* 206 ; *Gow. on Part.* 110 ; *Story on Part.* 189, *note.*  It is the same principle as that upon which the Court will decree the execution of a lease even after the term for which it was to continue has expired, in order to clothe the party with such legal rights as would have attached under the lease, had it been executed. *Nesbitt vs. Meyer,* 1 *Swanst.* 222 ; *Wilkinson vs. Torkington* 2 *Y. & C. Exch.* 726.

In the present case, Satterthwait and Chandler on fulfilling the covenants on their parts, became entitled to the legal rights stipulated for, and a court of equity ought to clothe them with these rights, even though the object of their purchase may be disappointed by Marshall's refusal to form the partnership after obtaining the patent, or by his dissolving it at any time after it should have been formed.  They were at liberty to take this risk, if they so chose.  It is true that the assignment of partial interests in patent rights may be attended, as in this case, with inconvenient consequences.  But this is unavoidable.  These rights are at common law and under the express terms of the Act of Congress assignable, either wholly or partially. *Act of July 4th,* 1836.  Any interests in them are transmissible by operation of law, as by succession

and assignments in bankruptcy. So that all the circumstances, such as this case involves, attending the assignment of partial interests in patents, are contemplated by the law, and are to be considered by parties when they contract, and not by the courts after the contracts are made.

One other objection remains to be considered, viz ; that the bill is defective so far as it seeks an assignment of Chandler's interest, in omitting to join him as a party complainant. This objection is not tenable. The assignment by Chandler to this complainant is absolute and unconditional, leaving in Chandler no remaining right, which could hereafter be asserted against the defendant ; the execution of the assignment, or its validity in equity is not questioned, nor could it be ; for Chandler's interest under the covenant of Marshall is expressly made assignable, and such effect can be given to it in equity, though not at law ; nor is the performance, by Chandler, of the covenants, which were consideration for his interest in the patent-right, denied ; and no question touching Chandler's interest is raised by the answer, which cannot be tried between the present parties.

There is no arbitrary, universal rule either that the assignor shall or shall not be made a party. That depends upon the nature of the assignment, whether it be conditional or absolute : whether there remains in the assignor any right or liability which may be affected by the decree ; or whether, from any special circumstances, the Court considers that the assignor ought to be represented. The rule is clearly thus stated, in *Sto. Eq.* 1. *Sec.* 153, and explained and applied by two eminent American authorities,—Chancellor Kent in *Whitney vs. McKinney*, 7 *Johns. Ch.* 147, and Story, Justice, in *Trecothick vs. Austin*, 4 *Mason* 41 *&c.* In the case which on another point I have cited from 4 *Humph. Tenn. Rep.*, *Tilman & Gil. vs. Cannon*, an assignor of an interest under a covenant in that case, was held to be a necessary party to a bill for specific per-

formance of the covenant ; but there the assignment was not absolute, being for the benefit of creditors, and leaving a contingent ultimate interest in the assignor, which it was necessary should be represented.

I may add that the objection of the want of a party is never in the absence of gross laches, a fatal one. Whenever justice so requires, the Court will allow a necessary party to be made even after a hearing, upon just terms. This mode of amendment is liberally allowed.

Upon the whole case I am of opinion that the covenant to assign ought to be specifically enforced and shall decree accordingly.

NOTE. The decree in this case was never executed. The defendant, refusing to do so, was imprisoned under an attachment, and afterwards discharged, because of his becoming insane. See *State vs. Marshall, post.*