THE HIGHLANDS, EVANSTON-LINCOLNWOOD SUBDIVISION, FIRST ADDITION, TRUST NO. 1546, CENTRAL REPUBLIC TRUST COMPANY, AS SUCCESSOR TRUSTEE BY CONSOLIDATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE HIGHLANDS, EVANSTON-LINCOLNWOOD SUBDIVISION, TRUST NO. 1521, CENTRAL REPUBLIC TRUST COMPANY, AS SUCCESSOR TRUSTEE BY CONSOLIDATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 74464, 74465. Promulgated June 12, 1935.

*Franz W. Castle, Esq.,* and *Raymond A. Duggan, C. P. A.,* for the petitioners.

*B. M. Coon, Esq.,* and *John W. Smith, Esq.,* for the respondent.

OPINION.

ARUNDELL: The salient facts concerning these two trusts may be briefly stated. The organizers of the Paramount Realty Corporation located two tracts of land available for subdivision. Not having sufficient funds of their own to handle the deals, they procured from a number of individuals sufficient funds to start the subdivision enterprises. In order to protect the individuals advancing the money, title to the land was placed in the trustee. Paramount Realty was appointed sales agent. Under the agency and trust agreements Paramount Realty collected and retained a portion of the initial payments made by the purchasers of lots. The amount over and above the part retained by Paramount Realty was paid to the trustee, which also collected all installments on deferred payment sales. The amounts so received by the trustee were received primarily for the benefit of those who advanced the funds necessary to start the projects. They were to receive stated amounts and any excess was to go to Paramount Realty.

The respondent has classified these trusts as associations and taxed them as corporations.

Section 701 (a) (2) of the Revenue Act of 1928 provides that " The term ' corporation ' includes associations, joint stock companies, and insurance companies." The respondent has formulated regulations for the purpose of defining the term " association " and distinguishing associations from other organizations. See articles 1312, 1313, and 1314 of Regulations 74. The revenue act itself does not define what constitutes an association. The Supreme Court, in *Hecht* v. *Malley*, 265 U. S. 144, has partially defined the term as follows:

The word "association" appears to be used in the Act in its ordinary meaning. It has been defined as a term "used throughout the United States to signify a body of persons united without a charter, but upon the methods and form used by incorporated bodies for the prosecution of some common enterprise." 1 Abb. Law. Dict. 101 (1890) ; 1 Bouv. Law Dict. (Rawle's 3d Rev.) 269; 3 Am. and Eng. Enc. Law (2d Ed.) 162; and *Allen* v. *Stevens*, 33 App. Div. 485, 54 N. Y. Supp. 8, 23, in which this definition was cited with approval as being in accord with the common understanding. Other definitions are:

" In the United States, as distinguished from a corporation, a body of persons organized, for the prosecution of some purpose, without a charter, but having

the general form and mode of procedure of a corporation." Webst. New Internat. Dict.

"[U. S.] An organized but unchartered body analogous to but distinguished from a corporation." Pract. Stand. Dict.

There have been a great number of cases before us and in the courts involving the proper classification of groups of persons associated under instruments designated as trusts. None of the decisions lay down a definitive rule into which all cases can be fitted and accurately judged. In fact, in one of the recent cases, *Coleman-Gilbert Associates* v. *Commissioner*, 76 Fed. (2d) 191, it is said that "the decisions are seemingly in a hopeless state of confusion." The court there, after reviewing a number of decisions, had this to say:

From the decisions of the Board of Tax Appeals and the several Circuit Courts of Appeals, it is impossible to mark out any definite pathway to follow in every case. The only conclusion is that each case must depend on its own state of facts.

In view of the lack of comprehensive definition and the absence of any well defined trend of judicial decision, we must find the solution through the process of "balancing the resemblances which petitioner bore to a trust, against those which it bore to a corporation, and considering also the facts as to what the petitioner actually did." *Lucas* v. *Extension Oil Co.*, 47 Fed. (2d) 65; *Commissioner* v. *Brouillard*, 70 Fed. (2d) 154, 158.

The petitioner here was in form a trust. There was a grantor and a trustee, and there were beneficiaries. There was but one trustee, who took title to the property for the benefit of the beneficiaries. The trustee was limited in its powers to deal with the property. In these respects the organization had the characteristics of a trust rather than that of a corporation. There was not present in the organization the control that corporate stockholders customarily may exercise. While under the more recent cases it is held that "beneficiary control is not a requisite to the taxability of a trust as a corporation", *Morrissey* v. *Commissioner*, 74 Fed. (2d) 803, still "the absence of such control is assuredly an element which should be taken into consideration." *Extension Oil Co.*, 16 B. T. A. 1028; affd., 47 Fed. (2d) 65.

About the only resemblance of this organization to a corporation was the issuance of certificates of interest to beneficiaries. This in itself does not necessarily classify it as a corporation. There was no group corresponding to corporate directors in duties or powers. The functions of the trustee were limited to seeing that sales contracts complied with the trust agreement; it had no power to exercise general supervision over sales or to determine policies as would a board of directors. This case differs from that of *Swanson* v.

*Commissioner*, 76 Fed. (2d) 651. In that case the organization was created for a definite period of time for the purpose of managing an apartment building. The trustee had broad powers including the power to exchange, reconstruct, remodel, sell or improve at their discretion, or to borrow money secured by the property. In this case, as pointed out above, the trustee had no such broad powers. Here the acts of the trustee were performed under direction of the trust agreements and supplements thereto and these were limited to such matters as were incidental to its administration of the trust rather than extended to the broad scope usually enjoyed by corporate directors as in the *Swanson* case.

The substance of the arrangement here in each case was to place title to a single tract of land in trust for the purpose of affording security to the group that advanced the money to enable the Paramount Realty Corporation to subdivide and sell the land. The organization bore little, if any, resemblance to a corporation in either structure or operation. In our opinion it should be classified as a trust and not as an association. Cf. *Tyson* v. *Commissioner*, 54 Fed. (2d) 29; *Commissioner* v. *Duckwitz*, 68 Fed. (2d) 629; *Coleman-Gilbert Associates* v. *Commissioner, supra.*

The second point has to do with the method of computing income from the sale of lots. The allegation of error, denied by the respondent, is: "Use of an improper accounting method to reflect taxable income or losses." No evidence was introduced which will support any finding as to the method of keeping books. Two of petitioners' witnesses were examined as to the Paramount Realty Corporation's method of bookkeeping. One of them testified that the 25 percent of the down payment retained by Paramount "went into the Paramount Realty Corporation's general account", and, "I imagine we carried it as a commission item." The other witness stated: "The twenty-five percent on our books was treated as the down payment, the first twenty-five percent was treated as a sales expense." Further, on cross-examination, "it [the 25 percent] was allocated to sales expenses, because it was all paid out for sales expenses, or for money that we had advanced for sales promotion or advertising."

We gather from statements in the deficiency notice and the briefs of the parties that the respondent treated the commission retained by the Paramount Realty Corporation as a deductible business expense rather than as a reduction of either the selling price of the lots or the initial payment thereon. This is in accordance with the long established practice of the Bureau. See I. T. 2305, C. B. V-2, p. 108; art. 352, Regulations 74 and 77; art. 44–2, Regulations 86. Petitioners' claim, as we understand it, is that the net amount

received after deducting the part retained by the Paramount Realty Corporation should be treated as the selling price. This would have the effect of throwing back into the earlier years some of the profit ultimately realized on the deferred payment sales. We know of no authority for this method of computing income. The gross amount which purchasers contracted to pay was the selling price and must be accounted for as such, regardless of bookkeeping or accounting methods. Commissions on sales are business expenses to be deducted in the years of accrual or payment, according to whether the taxpayer is on the accrual or cash basis, and are to be deducted in arriving at net income. This is the normal method of determining income and petitioners have not shown any reason for a departure therefrom. Some argument is made as to the lack of value of the sales contracts. We do not see what this has to do with the question presented; moreover, there is no evidence at all as to the value of the contracts.

*Decision will be entered under Rule 50.*