## St. Joseph Hydraulic Company *v.* Globe Tissue Paper Company.

[No. 18,712.   Filed March 9, 1901.   Rehearing denied June 28, 1901.]

SPECIFIC PERFORMANCE. — *Agreement to Execute Lease.* — Where plaintiff expended a large sum of money in equipping a mill on the faith of an oral agreement entered into with defendant to execute a twenty-five year lease for water power to operate the mill, and began the operation of the mill, paid the quarterly instalments of rent and operated the mill for four years, plaintiff is entitled to be placed in such position that it can enforce its rights the same as if said lease had been executed by defendant at the proper time. *pp. 666-673.*

SAME.—*Agreement to Execute Lease.—Statute of Frauds.*—Clause 4 of §6629 Burns 1894, providing that contracts for the sale of lands or any interest therein cannot be enforced unless the contract or agreement upon which the action is brought, or some memorandum or note thereof, shall be in writing, signed by the party to be charged, does not abridge the power of the court to enforce the performance of an oral agreement to execute a twenty-five year lease of a water right to operate a mill, where plaintiff expended a large sum of money in constructing the mill on the faith of the oral agreement, operated the mill for four years, and paid the quarterly instalments of rent as per the agreement. *pp. 673, 674.*

SAME.—*Agreement to Execute Lease.—Statute of Frauds.—One Year Clause.*—Clause 5 of §6629 Burns 1894, providing that no action shall be brought upon any agreement not to be performed within one year from the making thereof, unless the same, or some memorandum or note thereof, was in writing, has no application to an action to enforce an oral agreement to execute a lease of a water right, since such lease conveys an interest in the land. *p. 674.*

CORPORATIONS.—*Contracts.—Manner of Execution.*—The provision of §4829 Burns 1894, under which a corporation was organized, that all notes, bonds or contracts entered into by the company, signed by the president, shall be binding on the company, is not a restraint upon the general power of the corporation to contract. *pp. 674-676.*

SAME.—*Agreement to Execute Lease.—Memorandum.—Evidence.*— A memorandum of the terms of a contract for a lease as agreed upon between the parties, made in duplicate and read and approved by the parties, is admissible in evidence in the trial of an action for the enforcement of the lease as a part of the transaction between the parties, although the memorandum was not signed. *pp. 676, 677.*

St. Joseph, etc., Co. *v.* Globe, etc., Co.

EVIDENCE.—*Self Serving Declarations.—Checks.*—In an action to enforce a contract for a lease of water power, checks given in payment of the rent were properly introduced in evidence by plaintiff for the purpose of proving payment of rent from the time it went into possession up to the time of the trial, although the check, made after the commencement of the suit, contained the indorsement that it was given in full payment of water rent as per agreement. *p. 677.*

SAME.—*Self-Serving Declarations.—Letters.*—In an action to enforce a contract for a lease of water power, a letter written by plaintiff to defendant, accompanying a check for water rent, stating the terms and conditions upon which the check was sent was admissible in evidence, where defendant accepted the check without making any objections to the statements made in the letter. *pp. 677, 678.*

From the Elkhart Circuit Court. Affirmed.

*J. M. Van Fleet* and *V. W. Van Fleet,* for appellant.

*F. E. Baker, C. W. Miller, O. T. Chamberlain* and *P. L. Turner,* for appellee.

MONKS, J.—This suit was brought by appellee to compel appellant to execute a written lease to appellee. Final judgment was rendered in favor of appellee. The errors assigned call in question the action of the court in overruling the demurrer to the complaint, and in overruling the motion for a new trial.

The complaint avers, in substance, "that the plaintiff and defendant are each corporations; that the defendant was the owner of certain water power, in the city of Elkhart, created by a dam across the St. Joseph river, and that it owned a head-race extending from the river above the dam on the north side westwardly to a point below the dam; that the defendant, being desirous of furnishing the plaintiff a certain portion of said water power, agreed to furnish to the plaintiff 9,927 cubic feet of water per minute under a working head of ten feet, and more or less, proportionately, as the head may vary above or below said ten feet; said water to be furnished from said hydraulic head-race, and to be delivered to said Globe Tissue Paper Company in their flume or flumes adjacent to said head-race; that at said time there was

standing upon the south side of said head-race, and between it and the St. Joseph river, large brick buildings which formerly had been used in the manufacture of paper, using water therefor from said head-race; that said buildings were then empty, but the flumes connecting said head-race with said buildings and the water-wheels in said buildings and the machinery for the manufacture of paper were all then intact in said buildings; that plaintiff had in contemplation at said time the purchase of said buildings and the ground under and about the same, all of which the defendant well knew; that at said time it was further agreed by and between the plaintiff and defendant that all measurements of said water, to determine the quantity used or drawn by said Globe Tissue Paper Company, should be by means of a weir in the tail-race or waste below the discharge of the water-wheels in said buildings and on the premises of which said buildings composed a part; that it was further agreed that said Globe Tissue Paper Company might cancel the obligations of the contract upon giving six months' notice of a total suspension of business; that it was further agreed that in case the defendant should fail to furnish the water as specified, by reason of the natural shrinkage of the river, that the plaintiff should not be liable for any rental; that the plaintiff should pay the defendant the sum of $2,000 yearly rental for said water power, payable quarterly, and that if the rent named should remain unpaid for a period of thirty days the defendant should have the privilege of shutting off the supply of water until the rental should be paid, and that the plaintiff should have a priority of rights of water over all other leases, and that the defendant reserved the right to draw the water from said race when necessary to make repairs or to construct flumes, but not to exceed thirty days in one year, and that said race was not to be unnecessarily filled up by waste from said mill, and that said lease should commence on September 1, 1891, or such time as the mill should be ready to run; that at that time plaintiff caused

a written memorandum of said verbal agreement to be made, a copy of which is as follows: 'Elkhart, Indiana, May 29, 1891. The St. Joseph Hydraulic Company, for the sum of $2,000 yearly rental, payable quarterly, agrees to furnish the Globe Tissue Paper Company 9,927 cubic feet of water per minute, under a working head of ten feet, and more or less, proportionately, as the head may vary below or above the said ten feet, above named, from their hydraulic head-race, to be delivered to said Globe Tissue Paper Company in their flume or flumes, and adjacent to said above named head-race, for the term of —— years. All measurements of said water to determine the quantity used or drawn by the said Globe Tissue Paper Company shall be made by means of a weir in the tail-race or waste way, below the discharge of the wheels into said waste way on the premises of the said Globe Tissue Paper Company. The Globe Tissue Paper Company may cancel the obligations of this lease upon giving six months' notice of a total suspension of business. In case the Hydraulic Company fail to furnish the water as specified herein, by reason of the natural shrinkage of the river, said Globe Tissue Paper Company shall not be liable for said rental named. In case the rental above named remains unpaid after due, for a period of thirty days, said Hydraulic Company shall have the privilege of shutting off the water, until said rental shall be paid. Said Globe Paper Company shall have priority of rights of water over all other leases. The Hydraulic Company reserves the right to draw the water from the races for a period of time necessary to make repairs or to construct flumes, but not to exceed thirty days in any one year. Races not to be unnecessarily filled up by waste from the mill. Lease to commence September 1st, or such time as the mill may be made ready to run, to use power to make paper.' And that soon after plaintiff delivered a copy of this written memorandum to the defendant; that it was agreed by the parties at said time that the defendant would execute to the plaintiff a written lease

in accordance with said parol agreement as above set forth, and that the plaintiff should have the option of determining the number of years for which said lease should run; that plaintiff afterwards exercised its said option, and determined to have the lease run twenty-five years, and so notified the defendant, and the defendant consented thereto; that, relying upon said parol agreement, and relying upon the agreement of defendant to execute to plaintiff a formal written lease in accordance with said written memorandum above set forth, plaintiff purchased said grounds and buildings, and repaired and equipped the same with proper machinery for the manufacture of paper, at an expense of $25,000, and took possession thereof, and began the operation of its said mill on or about the — day of September, 1891, and in accordance with said written memorandum aforesaid, and plaintiff has ever since said time continuously operated said paper-mill plant under and by virtue of the terms of said written memorandum, excepting such times as plaintiff was obliged to shut its mill down by lack of water, and for other necessary causes; that plaintiff has duly performed all of the conditions of said agreement on its part, and has always been ready and willing, and still is, to accept a lease for said water power to the plaintiff, and in the future faithfully to keep and perform all of the conditions and agreements of said contract; but the defendant refused and still refuses to execute and deliver said lease." The prayer is that appellant be compelled to execute a lease.

It is first insisted by appellant that the provision "The Globe Tissue Paper Company may cancel the obligation of this lease upon giving six months' notice of a total suspension of business", to be contained in said lease, would give appellee the right to terminate the same, and for this reason the lease, if executed, would lack mutuality; that on account of the lack of mutuality, specific performance of its terms could not be enforced. *Marble Co.* v. *Ripley,* 10 Wall. 339, 359, 19 L. Ed. 955; *Express Co.* v. *Railroad Co.,* 99 U. S. 191, 25 L. Ed. 319.

Appellant also insists that the "agreement is uncertain and indefinite as to who shall put in the weir, how long it shall remain, or when it shall be put in," and for this reason specific performance cannot be enforced. *Louisville, etc., R. Co.* v. *Bodenschatz, etc., Co.*, 141 Ind. 251, 265. It will be observed, however, that appellee only sought in this action to compel appellant to execute a written lease, and not enforce specific performance of the terms of the lease itself.

The rules applicable to an action to compel the execution of a written lease, as in this case, are in many respects materially different from those governing an action to enforce its terms. In *Sterling* v. *Klepsattle,* 24 Ind. 94, 87 Am. Dec. 319, Sterling was the equitable owner and in possession of certain lands, but did not hold the legal title. He sold the land to Klepsattle and put him in possession under a parol agreement to execute a title bond therefor on the payment of the purchase money, the title bond to be conditioned for the conveyance of the land by proper deed as soon as Sterling obtained the legal title. After Klepsattle had paid the purchase money, Sterling refused to make the title bond. Before Sterling obtained the legal title, and while he was necessarily unable to perform the condition of the bond, Kelpsattle began suit to enforce specifically the parol agreement for the making of the title bond. Sterling denied the existence of the parol agreement. The court found the parol agreement to have been made and decreed that Sterling make the title bond. On appeal the judgment was affirmed.

After the time for which a lease, if it had been executed in accordance with an oral agreement therefor, has fully expired, it is evident that the performance of the stipulations and conditions of the lease itself cannot be specifically enforced; but, if the proposed lessee shows that he has changed his position in reliance on the oral agreement for the lease, and that there has been such performance on his part as will

take the case out of the operation of the statute of frauds, a court of equity will decree the making of the lease in order to clothe him with such legal rights as would have attached under the lease, had it been executed. *Satterthwait* v. *Marshall*, 4 Del. Ch. 337, 355; *Nesbitt* v. *Meyer*, 1 Swan. (Eng. Ch.), 222; *Wilkinson* v. *Torkington*, 2 Y. & C. Ex. 726.

An oral agreement for making a lease will not be specifically enforced against the proposed lessor, if the intended lessee has already broken a condition on which a forfeiture would arise; but if it is left fairly doubtful, on the evidence before the chancellor, whether the condition has in fact been broken by the complainant lessee, the court will direct the lease to be executed and antedated the time of the alleged breach, so that the issue may be fairly presented in an action at law. Pomeroy Spec. Perf. (2nd ed.), §291; Fry on Spec. Perf. (2 Am. ed.), §646; *Rankin* v. *Lay*, 2 De Gex, F. & J. 65, 72; *Pain* v. *Coombs*, 1 De Gex & J. 34; *Lillie* v. *Legh*, 3 De Gex & J. 204; Woodfall's Landl. and Ten. (16 Eng. ed.), 132.

The general rule is that a partnership contract cannot be specifically enforced, that is, it is impracticable for a court of equity to compel one person to act in the relation of a partner to another; but if a party, on the faith of another's agreement to execute certain articles of copartnership, has placed himself in a position from which he can not be restored except by counting on the legal rights which were to be evidenced by the articles, a court of equity will decree the execution of the articles, although the partnership might be terminated by the defendant immediately. *Satterthwait* v. *Marshall*, 4 Del. Ch. 337, 354; *Whitworth* v. *Harris*, 40 Miss. 483, 491; *Birchett* v. *Bolling*, 5 Munf. (Va.) 442. Note to *Crawshay* v. *Maule*, 1 Swan. 495, 513; *Buxton* v. *Lister*, 3 Atk. 383; *England* v. *Curling*, 8 Beav. 129; Gow on Part. (1st Am. ed.), pp. 148, 149; Parson on Part. (4th ed.), §163, and notes; Story on Part. (7th ed.) §§188, 189,

and notes; 1 Md. Ch. Pr. (3rd ed.) 411, note. Collier on Part. (Wood's ed.), p. 19, note 1, p. 275, §148; Lindley on Part. (6 Am. ed.), pp. 478, 479; George on Part., pp. 75-77; Bispham's Eq. (5th ed.), §507, and note 3 p. 624.

It appears from the complaint in this action that on the faith of the oral agreement for said lease, and the agreement of appellant to execute said lease in accordance with the terms of said written memorandum, appellee purchased the said grounds and buildings and repaired and equipped the same with proper machinery for the manufacture of paper, by the use of said water power, at an expense of $25,000, and took possession of and began the operation of said mill on September 1, 1891, and continued to operate the same and use said water and pay the annual rent of $2,000 in quarterly instalments until the commencement of this action, a period of four years. The contract for the lease was denied by appellant, and if executed would furnish appellee with the written evidence of the rights contracted for.

Under the allegations of the complaint, it is clear, from the authorities cited, that appellee is entitled to be placed in such position that it can enforce its rights the same as if said lease had been executed by appellant at the proper time. This can only be secured by compelling appellant to execute the lease contracted for as of the date of September 1, 1891. When such lease has been executed, even though a court of equity might not specifically enforce its terms for want of mutuality or uncertainty, a question, however, which we do not decide, appellee would be secure in its legal rights as to the past, present, and future, not only against appellant and its subsequent lessees with notice, but also as against all other persons. This conclusion is not in conflict with the cases of *Marble Co.* v. *Ripley,* 10 Wall. 339, 359, 19 L. Ed. 955, *Express Co.* v. *Railroad Co.,* 99 U. S. 191, 25 L. Ed. 319, and *Louisville, etc., R. Co.* v. *Bodenschatz, etc., Co.,* 141 Ind. 251, 265, cited by appellant. In said cases the

written agreement had been executed and the suit was to enforce specific performance of the terms thereof.

*Rust* v. *Conrad,* 47 Mich. 449, 41 Am. Rep. 720, cited by appellant, was a suit to compel the execution of a lease under a contract of option. In that case, however, it is not shown that possession had been taken or rent paid under the terms of the lease, nor that any money had been expended on the faith thereof. For all that appears, there was no consideration to support said agreement. That case, therefore, is not in point here.

It is next insisted that the contract for the lease not being in writing signed by the appellant, as required by clause four of §6629 Burns 1894, §4904 R. S. 1881 and Horner 1897, cannot be enforced. It is true that in this State contracts for the sale of land, or any interest therein, can not be enforced unless the contract or agreement upon which the action is brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him lawfully authorized, excepting, however, leases not exceeding three years. §6629 (4904), *supra.* This statute does not, however, abridge the power of the courts to compel specific performance of agreements in case of part performance. §6633 Burns 1894, 4908 R. S. 1881 and Horner 1897.

When there has been such part performance of an oral contract as to take the same out of the operation of the statute of frauds, specific performance thereof may be enforced. *Coe* v. *Johnson,* 93 Ind. 418, 419, and cases cited; *Swales* v. *Jackson,* 126 Ind. 282, 285, 286; Browne on Stat. of Frauds (5th ed.), §§465-490. This doctrine applies to parol agreements for a lease of real estate exceeding three years. 1 Taylor's Landl. & Ten. §§32, 49; Reed on Stat. of Frauds, §808; 1 Wood's Landl. & Ten., §201; *Nunn* v. *Fabian,* L. R. 1 Ch. 35; *Seaman* v. *Aschermann,* 51 Wis. 678, 8 N. W. 818, 37 Am. Rep. 849; *Seaman* v. *Ascher-*

*mann,* 57 Wis. 547; *Wolke* v. *Fleming,* 103 Ind. 105, 112, 53 Am. Rep. 495. It is evident from the authorities cited that the allegations of the complaint in regard to part performance of said contract by appellee, and the money expended on the faith of said contract for a lease, were sufficient to take the case out of the operation of the statute of frauds.

It is urged by appellant that the provision in the agreement to furnish and deliver water for twenty-five years falls within the one-year clause of the statute of frauds, §6629 Burns 1894, §4904 R. S. 1881 and Horner 1897, and can not be enforced because the same is not in writing. It appears from the complaint that appellant owned a hydraulic head-race, and agreed to furnish water to appellee's paper-mill, on its real estate adjacent to said head-race, through a flume or flumes connecting said mill with the head-race. Such provisions in a lease convey to the lessee an interest in the land of the lessor. *Noonan* v. *Orton,* 4 Wis. 335; *Spensley* v. *Valentine,* 34 Wis. 154, 160; Gould on Waters (3rd ed.), §576.

The fifth clause of §6629 (4904), *supra,* providing that no action shall be brought upon any agreement not to be performed within one year from the making thereof, unless the same or some memorandum or note thereof was in writing, has no application to contracts conveying an interest in land, and therefore not to this case. *Worley* v. *Sipe,* 111 Ind. 238, 239; *Wolke* v. *Fleming,* 103 Ind. 105, 110, 53 Am. Rep. 495; *Railsback* v. *Walke,* 81 Ind. 409, 412; *Baynes* v. *Chastain,* 68 Ind. 376; *Fall* v. *Hazelrigg,* 45 Ind. 576, 15 Am. Rep. 278.

Section 4829 Burns 1894, §3698 R. S. 1881 and Horner 1897, of the law under which appellant was organized provides: "All notes, bonds or contracts entered into by the company, signed by the president, shall be binding on the company." Appellant insists that under said provision, the contract not being in writing signed by its president is not binding on it.

Corporations have the power to make contracts, the same as natural persons, in carrying on the business which they are authorized to do, as one of the ordinary incidents of all corporations not specifically restricted. This doctrine applies to the manner in which a corporation may exercise its powers, and the rule is that, except where expressly restricted by charter or statute, corporations take by implication the right to use all reasonable means of executing their express powers, which a natural person might adopt in the exercise of similar powers. *New England Ins. Co.* v. *Robinson,* 25 Ind. 536, 541, 542, and cases cited; *Commercial, etc., Ins. Co.* v. *Union Mutual Ins. Co.,* 19 How. 318; *Sanborn* v. *Fireman's Ins. Co.,* 16 Gray 448, 77 Am. Dec. 419.

In *New England, etc., Co.* v. *Robinson, supra,* appellee sued appellant upon an oral contract to insure. The statute under which said insurance company was organized provided that said policies and all other contracts of said company may be made with or without the common seal of said company, and shall be signed by the president or vice-president, and countersigned by the secretary, and, being so signed and executed, shall be obligatory on said company.

It was urged by the appellant in said cause that under the charter it could not contract in any other manner than that specified therein. In response to this insistence the court said: "It is well settled that corporations must act within the powers conferred by the organic laws under which they are created. This rule is not inconsistent with another, which is that corporations, along with the expressed and substantive powers conferred by the charters, take by implication all the reasonable modes of execution which a natural person may adopt in the exercise of similar powers. * * * So, when a general authority to engage in that business is given to a corporation in express terms, and there are no special restraints in its charter, it takes the power as a natural person enjoys it, with all its

incidents and accessories. It may bind itself in any mode and form of obligation which is not forbidden." In *Sanborn* v. *Fireman's Ins. Co., supra,* the court said: "The next objection is, that the defendants had no authority to make the oral contract declared on, because they were by their charter authorized only to make contracts by the signature of their president or of such other person as their rules and by-laws should direct. The case chiefly relied on to support this position is that of *Head* v. *Providence Ins. Co.,* 2 Cranch 127, 2 L. Ed. 229. But while the principle which that case declares, that a corporation, being the mere creature of law, can have no powers but such as are derived from the act which creates it, is undoubtedly a sound one, the application of the principle has been very much modified in other cases. * * * We cannot think that a provision in the charter of an insurance company, authorizing contracts authenticated by the signature of a particular officer, and without any words of restriction, should generally be construed to limit the powers of the company, and to prevent them from making contracts within the ordinary scope of their chartered powers."

It is evident that said provision in the law under which appellant was organized was not intended as a restraint upon its general power to contract. It follows that the court did not err in overruling the demurrer to the complaint.

The memorandum, a copy of which is set out in the complaint, was read in evidence at the trial, over the objection of appellant, and this was assigned as a cause for a new trial. It appears from the evidence given on behalf of appellee before said memorandum was read in evidence that Miller and Newman, representing appellee, had a conference with Broderick and Hill, representing appellant, and that they made a contract for a lease and agreed on the terms. That Miller, at the time, made a memorandum of the terms of the lease, and read the same to said agents of appellant and ap-

pellee, who said they were satisfied therewith. Afterwards, appellee, relying on the agreement for said lease, purchased the paper-mill as alleged in the complaint for $9,000, and made lasting and valuable improvements thereon in order to use said water, amounting to $16,000. In June, 1891, after receiving the deed for the paper-mill, appellee's agent, Miller, informed Broderick, president of appellant company, that appellee had purchased the paper-mill, and requested appellant to execute said lease, which Broderick said he would do if furnished with a copy of said memorandum. The memorandum was made in duplicate, and Miller, when said request was made, delivered one of said copies to appellant. Said memorandum, although not signed, was a part of the conversation, a part of the transaction between the parties, and clearly admissible for that reason. Hosford v. Foote, 3 Vt. 391. The quarterly instalments of $500 rent for said water were paid by appellee's checks, and these checks, with the indorsement of the appellant company, were read in evidence by appellee. The check for $500 water rent for quarter ending December 31, 1895, contained the following: "In full payment for water rent for quarter ending December 31, 1895, as per our agreement made May 29, 1891." The bill of exceptions shows that appellant "objected to the introduction in evidence of this check, and objected to the indorsement on the same, namely, 'In full payment for water rent for the quarter ending December 31, 1895, as per our agreement made May 29, 1891', for the reason that this indorsement was made since the commencement of the present suit, and for the reason that it is a self-serving declaration, and an attempt to get their claim in court as evidence, without being under oath." It was proper for appellee to prove payment of water rent from the time it went into possession up to the time of the trial. The check, being admissible upon that question, was properly admitted, even if it could not be considered for any other purpose.

The check of $500 for water rent for quarter ending June 30, 1895, was accompanied by a letter from appellee to appellant which contained the following: "We herewith inclose our check for $500, which we offer as payment due June 30, 1895, for water rent as per our agreement made the 29th day of May, 1891, viz., for use of 9,927 cubic feet of water per minute, under a working head of ten feet, more or less, as the head may fall below or rise above ten feet, the same being a priority right over all other lessees, etc. But the above payment is not to be considered as an admission that we have received the amount of water we were entitled to, under said agreement. On the contrary, we claim that water has largely been diverted or drawn away from us by the wrongful act of your subsequent lessees, the Home Electric Light and Power Company, for which we shall hold you responsible." The proper foundation having been laid for the introduction of secondary evidence, a copy of said letter was, over the objection of appellant, read in evidence.

It is well settled that conversations between parties to a controversy, in which one makes a statement of facts of which both have personal knowledge which properly and naturally calls for a denial by the other if unfounded, are admissible in evidence against the silent party as admissions by acquiescence of the truth of the statement. The weight of such admissions depends upon the surrounding circumstances, and the strength of the probability that the statement, if untrue, would elicit a denial. 1 Greenleaf on Ev. (16th ed.) §§197, 198; 2 Wharton on Ev. (3rd ed.), §1136. The rule as to written communications is different. *Learned* v. *Tillotson,* 97 N. Y. 1, 8, 49 Am. Rep. 508; *Percy* v. *Bibber,* 134 Mass. 404; 2 Wharton on Ev. (3rd ed.), §1103, 1154. There are circumstances, however, under which unanswered letters are competent evidence of admission by acquiescence of the statements contained therein. As when the party receiving the letter has in any way invited the same, or when there is any ground to infer that he

acted on the letter, by partially answering or otherwise recognizing the same, or when with such letters goods or other articles are forwarded with bills, and received without return or protest. *Fenno* v. *Weston,* 31 Vt. 345; *Gaskill* v. *Skene,* 14 Ad. & El. (N. S.) 664, 668; *Gore* v. *Hawsey,* 3 Fost. & F. 509; *Lucy* v. *Mouflet,* 5 Hurl. & N. 229; *Roe* v. *Day,* 7 Car. & P. 705; *Hayes* v. *Kelley,* 116 Mass. 30; *Sturtevant* v. *Wallack,* 141 Mass. 119; *Wiggins* v. *Burkham,* 10 Wall. 129, 19 L. Ed. 884; 2 Wharton on Ev. (3rd ed.) §1154. The letter under consideration informed appellant of the terms and conditions upon and purpose for which the check for $500 was sent. Appellant did not return the check, or refuse to accept the same, or make any objections to or denial of the statements in said letter, but received the money on the check, thus acting upon the letter. Under such circumstances, it is clear, from the authorities last cited, that the letter and check were admissible.

What we have said disposes of the other causes assigned for a new trial and argued in appellant's brief. Judgment affirmed.

Baker, J., did not participate.