## WEIR v. UNITED STATES.*

Nos. 6243–6245, 6248–6250, 6252, 6253.

Circuit Court of Appeals, Seventh Circuit.

Oct. 21, 1937.

*Writ of certiorari denied 58 S.Ct. 368, 82 L.Ed. ——.

U. S. Lesh, James E. Lesh, George M. Barnard, and Raymond L. Walker, all of Indianapolis, Ind., and Charles D. Kelso, of New Albany, Ind., for appellants.

Val Nolan, U. S. Atty., and B. Howard Caughran, and Paul A. Pfister, Asst. U. S. Attys., of Indianapolis, Ind., for the United States.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellants seek to reverse convictions upon pleas of guilty to various indictments charging violation of section 592, title 12, U.S.C.A., subsequent to August 23, 1935, by embezzling certain assets of three state banks, of which they were officers or directors, making false entries in the books and in reports of condition of the banks to the Federal Deposit Insurance Corporation, and conspiracy to violate the law. The indictments charged that each bank was a state "nonmember bank" as defined by law, the deposits of which were insured, in accord with the federal law, in the Federal Deposit Insurance Corporation, organized under the laws of the United States, a part of the capital stock of which the United States owned. Appellants' demurrers were overruled. In turn, followed pleas of guilty, judgments of conviction, and the instant appeals.

Appellants contend that section 592 does not apply to offenses committed by officers of state banks which are not members of the Federal Reserve System even though the deposits are insured in the Federal Deposit Insurance Corporation; that if it is applicable to officers and directors of such banks, it is unconstitutional; that if the statute is applicable and Congress has power to enact it, it does not become effective as to nonmember state banks unless the state of Indiana authorizes such banks to insure their deposits under the federal law, and that such consent has not been given.

The pleas of guilty admitted all averments of fact and waived any defect in form of allegations. After such pleas the accused could not question any issue of fact or the propriety of its form of averment, People v. Brown, 140 Cal.App. 616, 36 P.(2d) 194; Miggins v. State, 170 Md. 454, 184 A. 911; Spoo v. State, 219 Wis. 285, 262 N.W. 696; Hudspeth v. State, 188 Ark. 323, 67 S.W.(2d) 191; and waives all defects not jurisdictional. Roberto v. U. S., 60 F.(2d) 774 (C.C.A.7); Kachnic v. U. S., 53 F.(2d) 312, 79 A.L.R. 1366 (C.C. A.9); Spirou v. U. S., 24 F.(2d) 796 (C.C. A.2); Rice v. U. S., 30 F.(2d) 681 (C.C.A. 5); Hocking Valley R. Co. v. U. S., 210 F. 735 (C.C.A.6). Consequently, by the pleas, appellants admitted that the banks in question were "nonmember banks" but that they were insured, participating in the benefits created by the Congress under the Federal Deposit Insurance Corporation Act. The questions submitted, therefore, are wholly legal in character.

Section 592 provides that any officer, director, or agent of any insured bank, as defined in the act, who embezzles any of the assets of such bank or makes any false entry in any of its books or reports, with intent to defraud the Federal Reserve System or the insured bank, or any other company, body politic, corporation, the Federal Deposit Insurance Corporation, or any agent appointed to examine the affairs of such insured banks, and any officer or director who aids or abets such act, shall be punished. The section originally extended to officers of only such banks as were members of the Federal Reserve System, but was amended in 1935 to include the officers of an "insured bank," which, according to subsection (c) (8) of section 264 of the act, is any bank, the deposits of which are insured under the act. The United States is the owner of capital in the Insurance Corporation to the extent of $150,000,-000.00. Section 264(d), title 12, U.S.C.A. A state "nonmember bank," is any state bank not a member of the Federal Reserve System. Section 264(c) (2). Subsection (f) of section 264 provides that every bank, not a member of the Federal Reserve System, which on June 30, 1935, was or thereafter became a member of the Temporary Federal Deposit Insurance Fund shall be and continue to be, without application or,

approval, an insured bank, subject to the provisions of the law. Subsection (f) further provides that upon application any state nonmember bank, upon examination by the corporation and approval by the board of directors, may become an insured bank. Under the averments of the indictments the banks mentioned therein must have complied with the act and become insured nonmember banks.

There is no doubt of the power of Congress to establish the National Banking System, the Federal Reserve Bank System, and institutions in furtherance of the power, such as the Federal Land Banks and Joint Stock Land Banks. McCulloch v. State of Maryland et al., 4 Wheat. 316, 4 L.Ed. 579; Osborn et al. v. President, etc., of the Bank of United States, 9 Wheat. 738, 6 L.Ed. 204; Westfall v. United States, 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036; Farmers' & Merchants National Bank v. Dearing, 91 U.S. 29, 23 L.Ed. 196; Smith v. Kansas City Title & Trust Co. et al., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577; Norman v. Baltimore, etc., R. Co., 294 U.S. 240, 303, 55 S.Ct. 407, 414, 79 L.Ed. 885, 95 A.L.R. 1352. And the power to inaugurate such systems and to create such institutions carries with it inevitably the power to preserve and protect them. In pursuance of this power of protection and preservation, Congress has created, as an agency of the government, the Federal Deposit Insurance Corporation to promote the soundness of banking and aid the government in the discharge of its fiscal transactions. Its obvious intent was, by insuring deposits, to prevent runs on banks by depositors, to preserve solvency of insured banks, and thus to keep open the channels of trade and commercial exchange. Clearly, under the decisions mentioned, the creation of the corporation was within the constitutional power of the government and the act is a proper basis for prosecutions for acts destructive of preservation of the agency thus created. Embezzlement by an officer of any insured state bank tends to end in loss to the Insurance Corporation and, by the same token, to the government itself. It tends to destroy the solvency of the bank, to cause closing thereof and, thus, to block the open channels of commercial exchange essential to the efficient operation of the government's fiscal and financial undertakings.

That Congress rightfully and properly extended criminal liabilities, intended to protect the insurance corporation and to keep the channels of commercial exchange open, to the officers of all insured banks is clear from the language in Westfall v. United States, 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036, where Mr. Justice Holmes held it constitutional for Congress to extend criminal liabilities to the officers of state banks who were members of the Federal Reserve System, even though chartered by and subject to the laws of the state, saying: "It is not disputed that Rev. Stat. § 5209 [12 U.S.C.A. § 592 and note] if applicable, punishes the bank manager, and those who aided and abetted him in his crime. Coffin v. United States, 156 U. S. 432, 447, 15 S.Ct. 394, 39 L.Ed. 481. The argument is that Congress has no power to punish offenses against the property rights of state banks. It is said that the statute is so broad that it covers such offenses when they could not result in any loss to the Federal Reserve Banks, and it is suggested that if upheld the Act will invalidate similar statutes of the States. This argument is well answered by Hiatt v. United States, 4 F.(2d) 374, 377 (C.C.A.7). Certiorari denied 268 U.S. 704, 45 S.Ct. 638, 69 L.Ed. 1167. Of course an act may be criminal under the laws of both jurisdictions. United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314. And if a State bank chooses to come into the System created by the United States, the United States may punish acts injurious to the System, although done to a corporation that the State also is entitled to protect. The general proposition is too plain to need more than statement. That there is such a System and that the Reserve Banks are interested in the solvency and financial condition of the members also is too obvious to require a repetition of the careful analysis presented by the Solicitor General. The only suggestion that may deserve a word is that the statute applies indifferently whether there is a loss to the Reserve Banks or not. But every fraud like the one before us weakens the member bank and therefore weakens the System. Moreover, when it is necessary in order to prevent an evil to make the law embrace more than the precise thing to be prevented it may do so. It may punish the forgery and utterance of spurious interstate bills of lading in order to protect the genuine commerce. United States v. Ferger, 250 U.S. 199, 39 S.Ct. 445, 63 L.Ed. 936. See further, Southern Ry. Co. v. United States, 222 U.S. 20, 26, 32 S.Ct. 2, 56 L.Ed. 72. That principle is settled. Finally Congress may em-

ploy state corporations with their consent as instrumentalities of the United States, Clallam County v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328, and may make frauds that impair their efficiency crimes. United States v. Walter, 263 U.S. 15, 44 S.Ct. 10, 68 L.Ed. 137."

From Mr. Justice Holmes' reasoning, it follows quite logically that if a state bank chooses to become an insured bank and thus to obtain and enjoy the benefits of deposit insurance furnished by the government through its agency created by Congress, it thereby submits itself to the penalties for violation of the law creating the benefits. The statute making such violations punishable evidently had for its intent the preservation of the Federal Deposit Insurance Corporation without loss. Congress recognized that every such fraud weakens the Insurance Corporation, and thereby, the Federal system and scheme in the sense mentioned by Justice Holmes. This court had previously so indicated in Hiatt v. United States, 4 F.(2d) 374 (C.C. A.7), where it was said: "It is sufficient to say that it had long been recognized that for the purpose of carrying on undisturbed the necessary business and financial operations of the government some system should be devised whereby the banking operations of the country could be controlled and sudden and violent crises in financial affairs prevented. If, in the wisdom of Congress, it seemed that the inclusion of state banks and trust companies would contribute to such and other legitimate purposes of the Federal Reserve System, the right to so include them would seem not now open to question. The government may make use of concerns incorporated under state charters. * * * We are of opinion that Congress was clearly within its constitutional rights in authorizing the admission of state banks and trust companies to the privileges and benefits of member banks in the Federal Reserve System."

The distinction between a state bank member of the Federal System and a nonmember state bank, each one of which participates in and enjoys the benefits of the Federal Deposit Insurance law, is one of no substance so far as the criminal statute is concerned. It is not the property interests of banks by way of stock in the insurance corporation that create the necessary community of interest or association in a common federal design, but rather the common contribution to the cost of de-posit insurance and the common enjoyment of the resulting benefits. Consequently, voluntary joining by either sort of bank in the enjoyment of the fruits of the federal legislation must bring the officers of the bank within the purview of the concomitant criminal liabilities created by the federal act. We conclude that the inclusion of liability for criminal acts by directors and officers of all insured banks, state or national, was within the constitutional power of Congress.

But it is urged that the state of Indiana, having created the state banks and having complete jurisdiction of them under the Tenth Amendment, has reserved all police power over the same, until and unless it grants to nonmember banks the right to participate in and enjoy the fruits of federal law by becoming insured in the federal corporation, and that consent to such action has not been given. The government contends, on the contrary, that such consent appears clearly from the statutes of Indiana.

Under Indiana law its corporations, along with the expressed power conferred by their charters, "take by implication all the reasonable modes of execution which a natural person may adopt in the exercise of similar powers." They enjoy these powers as fully as natural persons, with incidental power to do anything necessary to accomplish their corporate purposes, not repugnant to law. Burns' Ann. St.Ind.1933, § 18-502; St. Joseph Hydraulic Co. v. Globe, etc., Co., 156 Ind. 665, 675, 676, 59 N.E. 995, 999. It would seem necessary, convenient, and expedient for the Indiana state banks to insure their deposits in the Federal Deposit Insurance Corporation, if they have opportunity so to do, and the statutes are void of provisions as to which such action would be repugnant. State banks in Indiana may make any agreement with their depositors so long as the rights of innocent third parties are not injuriously affected. Burns' Ann.St. Ind.1933, Supp.1936, § 18-1103 (Acts 1935, c. 5, § 25); Sindlinger et al. v. Department of Financial Institutions of Indiana (Ind. Sup.) 199 N.E. 715, 105 A.L.R. 501. These statutes and decisions are persuasive of the premise that the Legislature of Indiana has authorized any state bank to make any contract regarding deposits which does not injure third parties.

But we find, further, that on February 2, 1933, in the midst of an era of great eco-

nomic and commercial stress not only in Indiana but throughout the nation, the Legislature enacted section 18-2007, Burns' Ann. St.Ind.1933, as follows: "With the consent and approval of the department, [Department of Financial Institutions of the State of Indiana], any bank or trust company may become associated with any organization or association of banks and trust companies, whether state or national, or both, if such organization or association is formed pursuant to federal legislation which confers on banks or trust companies in this state the privilege of participating in such organization or association, and the purposes thereof are not inconsistent with any law of this state."

The purpose of such legislative action, at such time and under the then existing status of banking institutions, must have been to authorize state banks to enter into association with other banks and trust companies, either state or national, for the enjoyment of remedial federal legislation, the purposes whereof are not inconsistent with any law of the state.

The word "associate" is not of uniform meaning but is, rather, vague in its connotation. In ordinary nomenclature it signifies, to connect closely or join with others in a common purpose, activity, or responsibility, to partake or share in a common design. It implies participation by each of the individuals, so united, in the achievement of a common purpose. In its general and ordinary sense it is said to signify confederacy or union for a particular purpose, good or ill, without any uniform discrimination as to precise meaning. Thomas v. Dakin, 22 Wend.(N.Y.) 9, 104; Allen v. Stevens, 33 App.Div. 485, 54 N.Y.S. 8, 23; Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, 695, L.R.A.1918E, 639. To organize is to arrange individual elements interdependently, each individual having a special relationship with respect to the whole.

If the Indiana legislative act cited had any purpose whatever, it must have been to authorize banks of Indiana to participate and join with other banks in any common purpose promoted by any federal legislation not repugnant to the laws of Indiana. Insurance of deposits is not repugnant to such laws. By this act, the state exhibited an intention to waive its absolute control of its own creatures, the state banks, to the extent necessary to secure to them enjoyment of remedial legislation, and thus to authorize its banks to participate in and become associated with federal legislation which had to do with purposes not inconsistent with law. The Federal Deposit Insurance Corporation is owned by the government and member banks. It is in fact an organization of banks, fathered by the government, for the purpose of working out insurance, through the association or union of banks participating in such insurance, and is the product of federal legislation within the intent of the Indiana statute.

That the Legislature contemplated participation by Indiana banks in such federal legislation is further evidenced by the later Act of January 28, 1935, wherein section 213 of the banking statute was amended to provide that the state banking department should furnish to various agencies of the federal government and their examiners copies of all examinations of not only banks which are members of the Federal Reserve System, but also of all "banks whose deposits are or may become insured" by the Federal Deposit Insurance Corporation, and to disclose to the government and its agencies the condition of any bank whose deposits are so insured. Burns' Ann.St. Ind.1933, Supp.1936, § 18-1503 (Acts 1935, c. 5, § 39). It was a futile gesture for the Legislature to provide for the furnishing of such reports by nonmember insured banks if it had not previously authorized such banks to become insured.

It seems clear, therefore, that the general statutes of Indiana contemplate that state banks may make such contracts with regard to the deposits as are not repugnant to law; that in 1933 it was expressly provided that state banks might become associated with other banks as beneficiaries in federal legislation the purpose of which is not inconsistent with the state laws; that still later it was provided that nonmember state banks whose deposits are insured shall report to the federal authorities, and that as a result there is consent by the state to such banks' participation in the federal legislation. Such participation entails likewise the responsibilities created by that act. To the extent of its participation in the federal legislation, each bank became an instrumentality of the federal government, enjoying its remedial legislation and bound by its legal limitations and responsibilities.

The indictments were valid, and the judgments are affirmed.