In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-4008 & 00-4166

United States of America,

Plaintiff-Appellee/Cross-Appellant,

v.

Johnny P. Watts,

Defendant-Appellant/Cross-Appellee.

Appeals from the United States District Court
for the Central District of Illinois, Peoria Division.
No. 00-10007-004--Joe B. McDade, Chief Judge.

Argued April 17, 2001--Decided July 5, 2001

Before Fairchild, Cudahy, and Coffey,
Circuit Judges.

Cudahy, Circuit Judge.  On January 19,
2000, Johnny P. Watts and three
companions robbed a branch of the
Commerce Bank in Peoria, Illinois. While
two men jumped over the bank's teller
counter and removed approximately
$55,000, Watts stood near the front door
and allegedly pointed a small-caliber
handgun in the direction of the bank
tellers./1 All four men were
apprehended shortly after the robbery.

The indictment charged Watts with armed
bank robbery (count one), in violation of
18 U.S.C. sec. 2113(a) and (d), and using
or carrying a firearm during a crime of
violence (count two), in violation of 18
U.S.C. sec. 924(c)(1). On July 13, 2000,
Watts pleaded guilty to both counts, but
reserved the right to pursue on appeal a
line of argument popular with criminal
defendants these days: whether Congress
exceeded its Commerce Clause power by
enacting the federal armed bank robbery
statute.

The district court sentenced Watts to 57
months of imprisonment on the armed bank
robbery count with minimal objection from
either the government or Watts.
Sentencing on the second count, use of a
firearm, proved more contentious. Section

924(c)(1)(A)(ii) increases the minimum term of imprisonment from five to seven years upon a finding that the firearm was brandished during the crime. Because the indictment did not charge Watts with brandishing his firearm, the district court believed that Apprendi v. New Jersey, which holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. 466, 490 (2000),/2 precluded the higher seven-year mandatory minimum sentence prescribed by sec. 924(c) (1)(A)(ii). Accordingly, the district court declined the government's invitation to decide whether Watts brandished his firearm during the robbery and instead sentenced Watts to a five-year term of imprisonment on count two, to run consecutively with the 57-month term of imprisonment he received on count one.

Watts appeals his conviction, arguing that the district court should have dismissed count one because Congress exceeded its Commerce Clause power when it enacted the armed bank robbery statute. The government cross-appeals Watts' sentence, arguing that the district court should have considered imposing a seven-year term of imprisonment on count two because Apprendi does not govern mandatory minimum sentences.

I.

We first address Watts' argument that Congress exceeded its authority to regulate interstate commerce under the Commerce Clause when it enacted the federal armed bank robbery statute, 18 U.S.C. sec. 2113. As might be expected, Watts bases this argument on United States v. Lopez, 514 U.S. 549 (1995) (Gun-Free School Zones Act exceeded Congress' Commerce Clause power), and its progeny, United States v. Morrison, 529 U.S. 598 (2000) (Violence Against Women Act exceeded Congress' Commerce Clause power), and Jones v. United States, 529 U.S. 848 (2000) (construing reach of federal arson statute to exclude owner-occupied private property so as to avoid Commerce Clause question). Collectively, these cases teach that Congress' power to

regulate under the Commerce Clause is limited to three broad categories: "(1) 'Congress may regulate the use of the channels of interstate commerce'; (2) 'Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities'; (3) 'Congress' commerce authority includes the power to regulate those activities having substantial relation to interstate commerce.'" United States v. Taylor, 226 F.3d 593, 598 (7th Cir. 2000) (quoting Lopez, 514 U.S. at 558-59). These cases thus have put an end to a 58-year sequence in which the Supreme Court "consistently upheld federal legislation against claims that Congress had overstepped its authority under the Commerce Clause." Id. (and cases collected therein).

Watts advances a number of arguments in an effort to show that the federal armed bank robbery statute, 18 U.S.C. sec. 2113, falls into none of the above-noted categories of permissible Commerce Clause regulation. We need not discuss many of these arguments because they so clearly lack merit. See United States v. Wicks, 132 F.3d 383, 390 (7th Cir. 1997) (noting that any argument which claims that sec. 2113 exceeds Congress' powers under the Commerce Clause would be untenable); United States v. Harris, 108 F.3d 1107, 1109 (9th Cir. 1997) (noting that sec. 2113's regulation of banks that are insured by the Federal Deposit Insurance Corporation (FDIC) ensures that Congress has acted well within its Commerce Clause power); United States v. Wilson, 73 F.3d 675, 694 (7th Cir. 1995) (Coffey, J., dissenting) (describing sec. 2113 as a "properly framed" statute for Commerce Clause purposes).

Nonetheless, Watts does present one argument--regarding sec. 2113's jurisdictional reach over federally insured banks--that is worth exploring in slightly more detail./3 To further this argument, Watts relies primarily on Jones v. United States, 526 U.S. 227 (1999), which involved a challenge to the federal arson statute by a defendant who had set fire to an owner-occupied private residence. The arson statute at issue in Jones limited its jurisdiction to "property used in interstate or foreign

commerce or in any activity affecting interstate or foreign commerce." As part of its attempt to show that the private residence satisfied this jurisdictional requirement, the government pointed out that the house in question was insured under an insurance policy that had been issued by an out-of-state insurer. The Supreme Court rejected this argument, finding that the interstate insurance policy was insufficient to justify a finding that the residence had been used in interstate commerce. See Jones, 529 U.S. at 855-56.

Watts believes that, like arson, robbery is the kind of "paradigmatic common law crime" that requires more than proof of interstate insurance coverage--such as by the FDIC's deposit insurance--before Congress may prohibit the crime through an exercise of its Commerce Clause powers. Watts is even more convinced that FDIC insurance does not provide a proper basis for Congress' exercise of its Commerce Clause power because, as he was informed in a letter from a senior attorney at the FDIC, FDIC insurance does not even cover losses due to robbery. Accordingly, Watts is convinced that Congress exceeded its Commerce Clause power by turning the robbery of federally-insured banks into a federal crime.

We believe otherwise, for FDIC-insured banks are fundamental to the conduct of interstate commerce. Congress created the FDIC to "keep open the channels of trade and commercial exchange." Weir v. United States, 92 F.2d 634, 636 (7th Cir. 1937). As a result, "[t]he activities of an FDIC-insured institution . . . affect interstate commerce more than property insured by a private carrier. . . . [T]he government insurance is federally administered, federal officials periodically examine the accounts, and the reports sent to the FDIC deal with money that has been deposited from many sources, including those outside the state." United States v. Peay, 972 F.2d 71, 75 (4th Cir. 1992). Robberies of FDIC-insured banks thus have an interstate economic effect that is quite independent of the coverage that FDIC insurance extends to insured banks./4 It is therefore of no consequence that FDIC insurance does not cover losses due to robbery. Accordingly, at the very

least, the FDIC-insured financial institutions are instrumentalities and channels of interstate commerce and their protection from robbery is well within Congress's Commerce Clause power. See Harris, 108 F.3d at 1109.

## II.

On cross-appeal, the government argues that Apprendi-- which holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. 466, 490-- does not govern mandatory minimum sentences. As already noted, count two of the indictment charged Watts with a violation of 18 U.S.C. sec. 924, which prescribes increasingly lengthy mandatory minimum sentences depending on the seriousness of the firearm's use during the crime; merely using or carrying a firearm subjects the defendant to a mandatory minimum five-year term of imprisonment, sec. 924(c)(1)(A)(i), but "brandishing" the firearm increases the mandatory minimum to seven years, sec. 924(c)(1)(A)(ii). The district court believed that Apprendi prevented it from imposing the higher seven-year mandatory minimum sentence because the indictment did not charge Watts with brandishing his firearm during the robbery. Accordingly, the district court sentenced Watts to a five-year term of imprisonment under sec. 924(c)(1)(A)(i) without determining whether he brandished the firearm.

The government argues that the district court incorrectly interpreted Apprendi because Apprendi's inapplicability to statutory mandatory minimum sentences is well-settled in this circuit, as well as many of our sister circuits. See United States v. Rodgers, 245 F.3d 961, 967-68 (7th Cir. 2001) (and cases collected therein); United States v. Williams, 238 F.3d 871, 877 (7th Cir. 2001). Watts' only argument in the face of such overwhelmingly unfavorable precedent is to ask us to ignore our precedent, discount the majority's discussion of mandatory minimum sentences in Apprendi and adopt the rule of the Sixth Circuit, which is, as far as we can tell, the only circuit that extends Apprendi's reach to mandatory minimum sentences.

In applying Apprendi to mandatory minimum sentences, the Sixth Circuit reasoned that "[t]he basic holding of Apprendi is twofold: first, that courts must count any 'fact' that increases the 'penalty beyond the prescribed statutory maximum' as an element of the offense 'except for one important exception,' i.e., 'the fact of a prior conviction;' and second, that it 'is unconstitutional for a legislature' to treat 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' as mere sentencing factors, rather than facts to be established as elements of the offense." United States v. Ramirez, 242 F.3d 348, 350 (6th Cir. 2001) (emphasis in original). Focusing on this supposed second holding of Apprendi, the Sixth Circuit concluded "that 'the assessment of facts that increase theprescribed range of penalties to which a criminal defendant is exposed,' such as moving up the scale of mandatory minimum sentences, invokes the full range of constitutional protections required for 'elements of the crime.'" Id. at 351 (quoting Jones v. United States, 526 U.S. at 252 (Stevens, J., concurring)).

While the Sixth Circuit's reading of Apprendi is now perhaps a tenable one (and might indeed be the wave of the future), it is not, at this point, our reading. It is true, as noted by the Sixth Circuit, that the Apprendi majority did quote Justice Stevens' concurrence in Jones for the proposition that "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." See Apprendi, 530 U.S. at 490 (quoting Jones, 526 U.S. at 252 (Stevens, J., concurring)) (emphasis added). However, the majority also explicitly disclaimed any intent to overrule McMillan v. Pennsylvania, 477 U.S. 79 (1986), which held that a defendant's due process rights were not violated when a sentencing judge decided facts that raised the defendant's mandatory minimum sentence using the preponderance of the evidence standard. See Apprendi, 120 S.Ct. at 2361 n.13. Unlike the Sixth Circuit, we have resolved the tension between these seemingly contradictory statements by looking to the more specific of the two: "the majority opinion in Apprendi

specifically stated that, in cases
involving a mandatory minimum sentence,
the rule of Apprendi is not implicated
when the actual sentence imposed is less
severe than the statutory maximum."
Williams, 238 F.3d at 877. This is the
rule in this circuit, and, accordingly,
the district court erred by declining to
consider whether Watts was subject to a
mandatory minimum seven-year term of
imprisonment for brandishing his firearm
during the robbery.

III.

   For the foregoing reasons, the judgment
of conviction is Affirmed and the sentence
is Vacated. The case is Remanded to the
district court for further proceedings
consistent with this opinion.

FOOTNOTES

/1 The record does not reflect what role the fourth
co-defendant played in the robbery.

/2 Technically, Apprendi does not separately address
whether facts that increase the maximum penalty
for a crime beyond the prescribed statutory
maximum must be charged in the indictment. See
530 U.S. at 477 n.3. However, the Apprendi major-
ity quotes with approval the holding in Jones v.
United States: "under the Due Process Clause of
the Fifth Amendment and the notice and jury trial
guarantees of the Sixth Amendment, any fact
(other than prior conviction) that increases the
maximum penalty for a crime must be charged in an
indictment, submitted to a jury, and proven
beyond a reasonable doubt." 526 U.S. 227, 243 n.6
(1999) (emphasis added). See Apprendi, 530 U.S.
at 476. It is perhaps for this reason that we
have nonetheless read Apprendi to require that
certain facts must be charged in the indictment,
as well as submitted to a jury and proven beyond
a reasonable doubt. See United States v. Noble,
246 F.3d 946, 955 (7th Cir. 2001); United States
v. Brough, 243 F.3d 1078, 1080 (7th Cir. 2001)
(and cases cited therein).

/3 Section 2113(f) also extends to banks that are
members of the Federal Reserve System. However,
the parties confine their discussion to
sec. 2113(f)'s jurisdiction over FDIC-insured
banks, and we do so as well.

/4 For the sake of completeness, however, we note
that even if FDIC insurance does not cover losses
due to robbery, the FDIC's concern with robbery's
impact on its insureds is illustrated by its
requirement that insured banks "adopt appropriate

security procedures to discourage robberies, burglaries, and larcenies and . . . assist in identifying and apprehending persons who commit such acts." 12 C.F.R. sec. 326.0.